IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALLIANCE FOR A BETTER CALIFORNIA, ) | 02:05-cv-2124-GEB-DAD | |
| ) Plaintiff, ) | | |
| ) v. ) | ORDER | |
| ) UNITED STATES POSTAL SERVICE; JOE ) G. ZAPATA, United States ) Postmaster for the Santa Ana Main ) Office; THE CALIFORNIA RECOVERY ) TEAM; GOVERNOR SCHWARZENEGGER'S ) CALIFORNIA RECOVERY TEAM; DOES ) 1-5, et al., ) ) Defendants. ) | | |

On October 25, 2005, Plaintiff filed an Ex Parte Application for a Temporary Restraining Order ("Application"). A Minute Order issued on October 26, 2005, scheduling the Application for hearing on October 27, 2005, and stating that any oppositions should be filed by 4:30 p.m. October 26, 2005. Defendants filed their respective oppositions on October 26 and 27, 2005. The Application was argued on October 27, 2005.

Plaintiff argues that a temporary restraining order ("TRO") must issue "to prevent the ongoing misuse of a United States nonprofit mail permit by a political committee in the final [days] before the

November 8, 2005 special statewide election." (Memo. of P. & A. in Supp. of Pl.'s Ex Parte Application for TRO and Order to Show Cause re Prelim. Inj. ("Pl.'s Memo.") at 1.) Plaintiff and Defendant California Recovery Team ("CRT") are on opposite sides of a ballot initiative campaign concerning whether voters should approve Proposition 75, an initiative measure appearing on the November 8, 2005, special election ballot.

Plaintiff argues CRT has an unfair advantage in its campaign in support of Proposition 75 because it is inappropriately using the Nonprofit Standard Mail rate ("NSM rate") to send political advocacy materials.[1] (Pl.'s Memo. at 1-2.) Plaintiff asserts that this usage allows CRT to send mailings for approximately forty percent less than Plaintiff, which allows CRT to save "approximately $.07 per piece of mail." (Id. at 12.) Plaintiff calculates that utilization of the NSM rate will allow CRT to save "almost $700,000," which could be used for additional political advocacy. (Id.; Kaufman Decl. ¶¶ 10, 13, Ex. R.) Plaintiff contends that the effect of this savings is that the government is inappropriately subsidizing CRT's position on Proposition 75. (Pl.'s Memo. at 12.)

CRT applied to the United States Postal Service ("USPS") for the NSM rate based on its status as a "philanthropic social welfare organization" under Domestic Mail Manual 703.1.2.6. (CRT Opp'n at 10.) In September 2004, the USPS granted CRT's application. (Id.)

---

[1] Plaintiff also argued that CRT has inappropriately used its NSM rate to send political advocacy mail on behalf of Governor Schwarzenegger's California Recovery Team ("GSCRT"); however, the parties state that CRT and GSCRT are the same entity. (Pl.'s Memo. at 2; Def. CRT/GSCRT Am. Prelim. Opp'n to Application for TRO and Prelim. Inj. ("CRT Opp'n") at 18.)

Plaintiff contends that CRT is not eligible for the NSM rate under section 703.1.2.6 of the USPS regulations because it is not a "qualified nonprofit organization as required by section 1.2." (Pl.'s Memo. at 7-9.) Plaintiff argues that the regulations require CRT's "primary purpose" to be philanthropic, but that CRT's primary purpose is political advocacy. (Id.) Plaintiff argued at the October 27 hearing that because CRT is actually a political organization, like Plaintiff, a TRO should issue preventing CRT from benefitting from its inappropriate use of the NSM rate.

Specifically, Plaintiff argued a TRO should issue because CRT should have never been authorized by USPS to mail at the NSM rate, and alternatively, the USPS should have revoked CRT's authorization because it has become obvious that CRT is using the NSM rate primarily for political advocacy activities. (Id. at 7-11.) At the October 27 hearing, Plaintiff limited the scope of relief requested, arguing that a TRO should issue suspending CRT's eligibility for the NSM rate from the moment of the TRO's issuance to the day of the election. USPS opposed the issuance of a TRO, arguing that USPS has begun an administrative proceeding regarding CRT's eligibility to use the NSM rate, which was "triggered" by Plaintiff's "complaints to the post office." (Oct. 27, 2005 Hr'g.) USPS recognized that no decision would be made by the USPS before the special election, but nevertheless "urge[d] the Court to let the administrative proceedings take its course." (Id.) Plaintiff rejoined that the administrative review is inadequate because the special election is imminent and ballots will have been cast before USPS makes a decision. (Id.)

1    Plaintiff argues that "[t]his Court has jurisdiction to
2 order the Postal Service to enforce its own regulations," relying on
3 the Ninth Circuit decision in <u>Owen v. Mulligan</u>, 640 F.2d 1130 (9th
4 Cir. 1981). (Pl.'s Memo. at 10.) At the October 27 hearing,
5 Plaintiff appeared to indicate that the rationale of <u>Owen</u> would also
6 authorize the issuance of the limited TRO that was requested during
7 the hearing. <u>Owen</u> concerned "a suit in mandamus to require the Postal
8 Service to meet its statutory duty." <u>Siebert v. Conservative Party of</u>
9 <u>New York State</u>, 724 F.2d 334, 338 (2d Cir. 1983). USPS argues that
10 <u>Owen</u> is inapplicable because USPS is in the process of meeting its
11 statutory duty; specifically, it has initiated an administrative
12 proceeding to determine CRT's eligibility for the NSM rate. (United
13 States's Opp'n to Ex Parte Mot. for TRO at 5.) USPS notes that postal
14 regulations do not contemplate revocation of CRT's NSM eligibility
15 during the pendency of the administrative proceedings, "but on the
16 contrary . . . [allow] termination only after notice and an
17 opportunity to be heard." (<u>Id.</u> at 4-5.) Consequently, Plaintiff's
18 reliance on <u>Owen</u> is misplaced because Plaintiff seeks a TRO that would
19 compel USPS to act contrary to its regulations.
20    Therefore, the question is whether the Court has
21 jurisdiction to compel USPS to act contrary to its established
22 regulations or to issue a TRO that would achieve that same effect.
23 Plaintiff's Complaint asserts that subject matter jurisdiction is
24 proper under 28 U.S.C. § 1339 and 39 U.S.C. § 409(a). (Pl.'s Verified
25 Compl. for Injunctive Relief at 2.) Under § 1339, federal district
26 courts have original jurisdiction over any civil action arising under
27 any Act of Congress relating to the Postal Service; under § 409(a),
28

4

federal district courts have original but not exclusive jurisdiction over all actions brought by or against the Postal Service. "However, these statutes do not by themselves create a cause of action, but merely give . . . [the Court] jurisdiction over an otherwise existing cause of action." People Gas, Light & Coke Co. v. United States Postal Service, 658 F.2d 1182, 1189 (7th Cir. 1981)(28 U.S.C. § 1339 and 39 U.S.C. § 409(a) do not provide a cause of action); Currier v. Potter, 379 F.3d 716 (9th Cir. 2004) (39 U.S.C. § 409(a) does not provide a cause of action). Consequently, to each of these provisions there must be added a "substantive legal framework of federal law to confer subject matter jurisdiction." Currier, 379 F.3d at 725; People Gas, 658 F.2d at 1189. Therefore, the regulations at issue must explicitly or implicitly provide Plaintiff a cause of action, otherwise no subject matter jurisdiction exists. See Currier, 379 F.3d at 725.

Upon inspection, it is apparent that Domestic Mail Manual 703.1 does not provide Plaintiff with an express cause of action against the USPS; thus, subject matter jurisdiction exists only if the regulation implies a cause of action. When determining whether an implied cause of action exists, several factors are relevant:

> 'First, is the plaintiff one of the class for whose especial benefit the statute was enacted . . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law . . . ?'

1  Currier, 379 F.3d at 725 (quoting Cort v. Ash, 422 U.S. 66 (1975)).
2  Of these factors, the Ninth Circuit has emphasized that "the second
3  and third are determinative." Id.
4         In Currier, the Ninth Circuit examined whether the
5  plaintiffs had an implied cause of action under Domestic Mail Manual
6  910.5.1(a). Id. at 723 n.4. The Ninth Circuit stated "[w]e are not
7  persuaded that Congress, by enacting the [Postal Reorganization Act],
8  intended to subject the Postal Service to suit for violations of
9  regulations . . . We are satisfied that the [Postal Reorganization
10 Act] evinces Congress'[s] general intent to withdraw judicial scrutiny
11 of postal regulations." Id. at 724-25. In light of Congress's
12 intent, the Ninth Circuit held that "the second and third factors
13 militate against our inferring a private right of action." Id.
14 Similarly, Plaintiff has alleged the violation of a Domestic Mail
15 Manual regulation that was issued pursuant to certain sections of the
16 Postal Reorganization Act. See 39 U.S.C. § 3626(a). Accordingly, in
17 light of the Ninth Circuit's analysis, the second and third factors
18 also militate against inferring a private right of action under
19 Domestic Mail Manual 703.1.
20         The Court is not unsympathetic to Plaintiff's plight.
21 Plaintiff has presented evidence which raises serious questions about
22 the propriety of CRT's continued use of the NSM rate. Plaintiff will
23 likely suffer some harm in the hotly contested special election if
24 CRT's use of the NSM rate is in fact inappropriate. Although
25 Plaintiff may be wronged by the acts of Defendants, Congress has not
26 provided Plaintiff with the remedy it seeks. See Seibert, 724 F.2d at
27 337 ("where Congress felt a need for private remedies under the postal
28

laws it . . . expressly provided for them"). Therefore, Plaintiff's application for a TRO is denied because the Court lacks subject matter jurisdiction.

        IT IS SO ORDERED.

Dated:  November 1, 2005

                                <u>/s/ Garland E. Burrell, Jr.</u>
                                GARLAND E. BURRELL, JR.
                                United States District Judge