IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALLIANCE FOR A BETTER CALIFORNIA, | ) ) ) | |
| Plaintiff, | ) ) | 2:05-cv-2124-GEB-DAD |
| v. | ) ) | ORDER* |
| UNITED STATES POSTAL SERVICE; JOE G. ZAPATA, United States Postmaster for the Santa Ana Main Office, | ) ) ) ) ) | |
| Defendants. | ) ) | |

        Plaintiff Alliance for a Better California ("Alliance")
moves for summary judgment and/or partial summary adjudication.
Defendants oppose the motion and move to dismiss Alliance's Amended
Complaint ("Complaint") under Federal Rule of Civil Procedure 12(b)(1)
or, in the alternative, for summary judgment or partial summary
adjudication.  Alliance opposes the motion.  For the following
reasons, Defendants' motion to dismiss is granted and therefore the
summary judgment motions need not be decided.

---

        *    This case was determined to be suitable for decision without
oral argument.  L.R. 78-230(h).

1

BACKGROUND

Alliance is a general purpose California political committee that was active in the November 2005 special elections. Alliance planned to campaign in support of or in opposition to certain ballot measures considered by California voters in June and November 2006. (Compl. ¶ 4.) Defendant United States Postal Service ("USPS") is the federal agency responsible for administering the United States mailing system. (Id. ¶ 5.) Defendant Joe G. Zapata is the United States Post Master for the Santa Ana Mail Post Office and is being sued in his official capacity only. (Id. ¶ 6.)

Alliance challenges Defendants' decision authorizing the California Recovery Team (CRT), a political committee formed by California Governor Schwarzenegger's California Recovery Team (GSCRT),[1] to post political mail at the Nonprofit Standard Mail ("NSM") rate. (Id. ¶¶ 1, 7-8.) NSM rates are reduced mailing rates granted by USPS. Under federal law, only certain qualifying entities are entitled to NSM rates, including "qualified political committees" and "qualified nonprofit organizations." (Id. ¶¶ 22-23.) In September 2004, GSCRT was granted NSM rate authorization as a nonprofit philanthropic organization. (Pl.'s Mot. at 4.)

In October 2005, Alliance became aware that CRT was using the NSM rate to send political mail supporting Proposition 75, a measure on the November 2005 ballot. (Compl. ¶ 33.) Alliance subsequently filed a complaint with USPS in which it requested Defendants to revoke or cancel CRT's NSM rate authorization. (Id.

---

[1]   The Complaint alleges that "[b]oth GSCRT and CRT [are the same entity and] were formed to support and further the agenda of Governor Schwarzenegger, and both have been described as [his] 'political committee.'" (Compl. ¶ 9.)

1  ¶ 38.)  Thereafter, USPS conducted an investigation of CRT's use of

2  the NSM rate.  (Id. ¶ 41.)  Alliance avers that in January 2006, USPS

3  determined that CRT's NSM rate should not be revoked since it is a

4  "philanthropic organization."  (Id. ¶ 45.)

5          Alliance claims that USPS' grant of NSM rate authorization

6  to GSCRT is contrary to federal law since "GSCRT embodies none of the

7  attributes of a qualifying philanthropic organization and is instead

8  a purely political organization."  (Pl.'s Mot. at 1.)  In particular,

9  Alliance alleges USPS violated 39 U.S.C. § 403(c)[2] when it issued NSM

10  rate authorization to CRT, because CRT is not entitled to such

11  authorization under federal law, and the "authorization constitutes an

12  'undue or unreasonable discrimination among users of the mail' or an

13  'undue or unreasonable preference[]' within the meaning [§ 403(c)]."

14  (Id. ¶ 50.)  Alliance also alleges that issuance of the NSM rate

15  violated 39 U.S.C. § 3626(e)[3] because "CRT is a political committee

16  but is not a 'qualified' political committee within that provision."

17  (Id. ¶ 51.)

18  _____

19      [2]   39 U.S.C. § 403(c) provides: "In providing services and in
    establishing classifications, rates and fees under this title, the

20  Postal Service shall not, except as specifically authorized in this
    title, make any undue or unreasonable discrimination among users of

21  the mails, nor shall it grant any undue or unreasonable preferences to
    such users."

22
        [3]   39 U.S.C. § 3626(e)(2) provides: "For purposes of this

23  subsection–(A) the term 'qualified political committee' means a
    national or State committee of a political party, the Republican and

24  Democratic Senatorial Campaign Committees, the Democratic National
    Congressional Committee, and the National Republican Congressional

25  Committee; (B) the term 'national committee' means the organization
    which, by virtue of the bylaws of a political party, is responsible

26  for the day-to-day operation of such political party at the national

27  level; and (C) the term 'State committee' means the organization
    which, by virtue of the bylaws of a political party, is responsible

28  for the day-to-day operation of such political party at the State
    level."

1    Alliance claims that "USPS . . . has failed to enforce its

2  regulations concerning [NSM] rate authorization." (Id. ¶ 53.)

3  Finally, Alliance alleges that USPS violated the First and Fifth

4  Amendments by providing CRT with the authority to use the NSM rate

5  because "it improperly involves government subsidization of political

6  activity which is not available to other political organizations and

7  discriminates against other similarly situated political

8  organizations, including, but not limited to, Plaintiff." (Id. ¶ 55.)

9                                DISCUSSION

10    Dismissal is appropriate under Rule 12(b)(1) when either

11  Plaintiff's allegations in the Complaint are insufficient to confer

12  subject matter jurisdiction or there is no subject matter jurisdiction

13  in fact. Thornhill Publishing Co., Inc. v. Gen. Tel. & Elecs. Corp.,

14  594 F.2d 730, 733 (9th Cir. 1979). "In a facial attack [under Rule

15  12(b)(1)], the challenger asserts that the facts alleged in the

16  complaint are insufficient on their face to invoke federal

17  jurisdiction" and all allegations of material fact in the Complaint

18  must be accepted as true.[4] Safe Air for Everyone v. Meyer, 373 F.3d

19  1035, 1039 (9th Cir. 2004); National Licensing Association, LLC v.

20  Inland Joseph Fruit Company, 361 F.Supp.2d 1244, 1247 (E.D. Wash.

21  2004) (citing Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir.

22  1987).

23    Defendants argue that Alliance does not have standing to

24  bring this claim because it has not suffered a cognizable injury.

25  (Defs.' Opp'n and Mot. to Dismiss at 12.)  Alliance states that it

26

27

28        [4]    Although Defendants appear to argue their motion under an
alternative Rule 12(b)(1) standard, Defendants have not explained why
that standard should be used.

                                    4

"meets the constitutional standing requirements because it is a political competitor of CRT and has alleged an injury traceable to USPS' bestowal of an undue mail rate preference on CRT."  (Pl.'s Mot. at 19.)

Under Article III of the Constitution, "federal courts have jurisdiction over [a] dispute . . . only if it is a 'case' or 'controversy.'"  Raines v. Byrd, 521 U.S. 811, 818 (1997) (internal citations omitted).  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  "To meet the standing requirements of Article III, '[a] plaintiff must allege personal injury fairly traceable to the defendant's alleged unlawful conduct [that is] likely to be redressed by the requested relief."  Id. (citing Allen v. Wright, 468 U.S. 737, 751 (1984)).  "[W]hen the plaintiff is not [it]self the object of the government action or inaction [it] challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish."  Id. at 562 (internal citations omitted).

Alliance's alleged injury is not "fairly traceable to the challenged action of the defendant[s]" because Alliance does not allege in its Complaint that it applied to USPS for the NSM rate. Lujan, 504 U.S. at 560.  The Supreme Court reached an analogous result in McConnell v. FEC, 540 U.S. 93, 226 (2003), where the plaintiffs challenged § 307 of the Bi-Partisan Campaign Reform Act ("BCRA") which increased campaign contribution limits.  Certain plaintiffs contended they were injured by this increase since "[t]heir [political] candidates 'd[id] not wish to solicit or accept large campaign contributions as permitted by BCRA'" and the "increased . . . limits

allow[ed] plaintiffs-candidates' opponents to raise more money, and, consequently, the plaintiffs-candidates' ability to compete or participate in the electoral process [was] diminished." Id. at 228. The Supreme Court held this claimed injury was not shown "'fairly traceable' to BCRA § 307" because the plaintiffs' "alleged inability to compete stem[med] not from the operation of § 307, but from their own personal 'wish' not to solicit or accept large contributions, i.e., their personal choice." Id.

Since Alliance has not shown its injury is "fairly traceable to the challenged action of the defendant[s]" it has not shown it has standing to maintain this action. Lujan, 504 U.S. at 560.

For the stated reasons, Defendants' motion to dismiss this action is granted.

IT IS SO ORDERED.

Dated:  December 4, 2006

_____
GARLAND E. BURRELL, JR.
United States District Judge